IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LINSEY RIDGDELL | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:18CV373-HSO-JCG |
| | § | |
| ALLSTATE INSURANCE COMPANY; J, K, and/or L, *any insurance company or other entity which provides uninsured or underinsured motorist benefits to Plaintiff, all of whose names and legal addresses are presently unknown to the Plaintiff but will be substituted when ascertained, separately and severally* | § | DEFENDANTS |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ALLSTATE INSURANCE COMPANY'S [9] MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Allstate Insurance Company's Motion [9] for Judgment on the Pleadings, or in the Alternative, for Partial Summary Judgment. This Motion is fully briefed. After due consideration of the Motion [9], the record, and relevant legal authority, the Court finds that the Motion [9] should be granted to the extent it seeks judgment on the pleadings, and Plaintiff's claims against Allstate should be dismissed with prejudice.

I. BACKGROUND

A. Factual Background

On February 21, 2016, Plaintiff Linsey Ridgdell ("Plaintiff" or "Ridgdell") was a passenger in a vehicle driven by her cousin, Summer Davis ("Davis"), in George

1

County, Mississippi, when a second vehicle collided with Davis's vehicle. *See* Compl. [12] at ¶¶ 3, 19. Davis died in the collision, and Plaintiff suffered significant physical injuries, including a broken sternum, two broken ribs, and a shoulder injury. *Id.* at ¶¶ 19-20. Plaintiff incurred medical expenses totaling approximately $15,000.00. *Id.* at ¶ 21. According to the Complaint, the collision was caused by the second vehicle's driver (the "at-fault driver"), who was under the influence of alcohol at the time. *See id.* at ¶¶ 3-4.

The at-fault driver was insured by Shelter Mutual Insurance Company under a policy with $25,000.00 in liability limits. *Id.* at ¶ 4. At the time of the incident, Plaintiff was covered by a $25,000.00 underinsured motorist policy with her own insurer, State Farm, as well as by a policy issued to other individuals by Defendant Allstate Insurance Company ("Defendant" or "Allstate"), which included $50,000.00 total underinsured motorist benefits. *Id.* at ¶ 7. According to the Complaint, as the primary underinsured motorist coverage, State Farm's coverage was set-off by the at-fault driver's coverage, leaving only the Allstate underinsured motorist coverage available to Plaintiff. *Id.* at ¶ 8.

The at-fault driver's insurance company tendered its $25,000.00 limits, and on July 14, 2016, Plaintiff's counsel advised Allstate of the tender and "requested that Allstate promptly buy out the settlement or consent to the settlement, pursuant to established procedure in Mississippi." *Id.* at ¶ 8. According to Plaintiff, on July 25, 2016, Plaintiff's counsel again wrote Allstate's adjuster advising him of the underlying settlement with the at-fault driver's insurance company and

"requesting a prompt decision on consenting to the underlying settlement." *Id* at ¶ 10. On October 6, 2016, Plaintiff's counsel wrote another letter to the adjuster advising that counsel had "written multiple letters and left multiple phone messages, but Allstate had not responded to the communications." *Id* at ¶ 11. Plaintiff's counsel stated that Allstate "had an obligation to investigate claims with reasonable promptness and make a prompt and realistic evaluation of the claim." *Id.* Counsel also reminded Allstate "of its duty to pay claims that are covered, or to advise the insured of a valid reason why the claim was denied." *Id.* Plaintiff's counsel wrote Allstate's adjuster a final time on October 9, 2016, requesting it "consent or buy out the underlying settlement, pursuant to Mississippi law." *Id.* at ¶ 12.

According to the Complaint, on January 11, 2017, Allstate made its first offer of settlement on Plaintiff's underinsured motorist claim, offering $8,500.00. Six days later, on January 17, 2017, Plaintiff filed a separate lawsuit against Allstate in the Circuit Court of George County, Mississippi (the "State Court Case"), seeking recovery of underinsured motorist benefits.

B.  <u>The State Court Case</u>

In the complaint in the State Court Case (the "State Court Complaint"), Plaintiff asserted claims against Allstate for negligence and "willful, wanton, and/or reckless conduct of the underinsured motorist." State Court Compl. [9-1] at p. 2-7. Plaintiff later sought leave from the state court to amend her complaint, *see* State Court Mot. [9-2] at 1-2, which was granted pursuant to an agreed order entered on

3

April 30, 2018, *see* State Court Agreed Order [9-3] at 1. The first amended complaint was filed in the State Court Case on May 1, 2018. *See* State Court First Am. Compl. [9-4] at 1-7. According to Plaintiff, "the only thing the First Amended Complaint did was change the label of the conduct alleged in Count II from 'willful, wanton and/or reckless conduct' to 'gross negligence evidencing willful, wanton or reckless disregard for the safety of others.'" Pl.'s Mem. [16] at 4.

The State Court Case was tried to a jury from April 30, 2018, until May 1, 2018, and the jury returned a verdict in Plaintiff's favor in the amount of $200,000.00. *See* State Court Final J. [9-6] at 1. Considering the Allstate policy limits, on May 14, 2018, the state court entered a Final Judgment against Allstate in the amount of $50,000.00. *Id.* at 1-2.

C.  The Present Action

Following the conclusion of the jury trial, Plaintiff filed a separate Complaint on October 23, 2018, against Allstate in the Circuit Court of George County, Mississippi. Compl. [1-2] at 1. Allstate removed the case to this Court on November 26, 2018, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* Notice of Removal [1] at 1-4.

In the present case, Plaintiff claims that "Allstate breached its duty to conduct a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation." Compl. [1-2] at ¶ 30. According to the Complaint,

> Allstate did not have an arguable or legitimate basis of fact or law to not pay the policy limits of $50,000 from the time when it knew it knew [sic]

4

> or should have known the facts of the underlying case established Linsey's injuries and damages exceeded the policy limits All [sic] the way through the time of the jury verdict in the underlying litigation. Allstate's refusal to pay policy limits constitutes bad faith breach of contract and is and was not a genuine pocket book dispute "over the value of the Plaintiff's injuries."

*Id.* at ¶ 31. Plaintiff alleges that

> Allstate acted with malice and/or gross negligence in disregard of [her] contractual rights in failing to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation and in failing to offer the policy limits prior to the verdict in the underlying litigation.

*Id.* at ¶ 32. Plaintiff seeks an award of compensatory and punitive damages. *Id.* at 7.

Allstate removed the case to this Court on November 26, 2018, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* Notice of Removal [1] at 1-4. Allstate filed its Answer [2] the same day and pled the affirmative defense of res judicata. *See* Ans. [2] at 6; *see also* Fed. R. Civ. P. 8(c)(1).

D.  Allstate's Motion

On February 22, 2019, Allstate filed a Motion [9] for Judgment on the Pleadings, or in the Alternative, for Partial Summary Judgment.[1] Allstate argues that Plaintiff's claims are barred by the doctrine of res judicata. *See* Def.'s Mem. [10] at 8-12. Allstate alternatively argues that, even if any of Plaintiff's claims are not barred by res judicata, it is nevertheless entitled to summary judgment on

---

[1] While the title of Allstate's Motion is alternatively for "partial" summary judgment, Allstate has made clear in its briefs that it seeks dismissal of the entire case. *See* Def.'s Reply [19] at 1 n.1.

5

grounds that Plaintiff cannot establish the requisite elements of a bad faith claim. *Id.* at 12-16.

## II. DISCUSSION

A. Relevant legal authority

1. Motions for judgment on the pleadings

In considering Allstate's Motion pursuant to Federal Rule of Civil Procedure 12(c), the Court has not considered any of the materials in the record, such as the Affidavit [9-5] of Amanda B. Seymour, that would require the Court to convert the Motion into one for summary judgment. *See U.S. ex rel. Long v. GSDMIdea City, L.L.C.,* 798 F.3d 265, 275 (5th Cir. 2015) ("If the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment."); *see also* Fed. R. Civ. P. 12(d). The Court therefore considers the relevant legal standard for resolving this Motion pursuant to Rule 12(c).

The United States Court of Appeals for the Fifth Circuit has held that the applicable standard for resolving a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). A pleading is not sufficient, however, if it offers mere labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Id.*

In resolving a Rule 12 motion, a court can consider documents attached to the complaint and publicly available documents without converting the motion to one for summary judgment under Rule 56. *See, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (holding that, in resolving a Rule 12(b)(6) motion, a district court can take "appropriate judicial notice of publicly-available documents and transcripts . . . , which were matters of public record directly relevant to the issue at hand"); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (holding that a court considering a Rule 12(b)(6) motion is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint"); *see also Van Duzer v. U.S. Bank Nat. Ass'n*, 582 F. App'x 279, 283 (5th Cir. 2014) (Rule 12(c) motion).

2.  <u>Res judicata</u>

Defendant contends that Plaintiff's claims should be dismissed because they are barred under the doctrine of res judicata. In this case, the Court sits in diversity, and the claimed preclusive effect arises from a Mississippi state-court

7

judgment. Because "[a] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," *Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)), the Court must apply Mississippi law to determine whether res judicata is applicable, *see id.*; *see also Cox v. Nueces Cty., Texas*, 839 F.3d 418, 420-21 (5th Cir. 2016).

According to the Mississippi Supreme Court, the doctrine of res judicata is a public policy doctrine that "[r]eflects the refusal of the law to tolerate a multiplicity of litigation" and is "designed to avoid the expenses and vexation of attending multiple lawsuits, conserve judicial resources and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Clark v. Neese*, 262 So. 3d 1117, 1122 (Miss. 2019) (quotations omitted). "[A]ll grounds for . . . recovery that were available to the parties in the first action, regardless of whether they were asserted or determined in the prior proceeding, are barred from re-litigation in a subsequent suit under the doctrine of res judicata." *Gibson v. Williams, Williams & Montgomery, P.A.*, 186 So. 3d 836, 844 (Miss. 2016) (quotation omitted). The purpose of res judicata is "the prevention of claim-splitting." *Ward Gulfport Properties, L.P. v. Mississippi State Highway Comm'n,* 176 So. 3d 789, 794 (Miss. 2015) (quotation omitted).

Under Mississippi law, in order for res judicata to apply, four identities must be present: "(1) identity of the subject matter of the action, (2) identity of the cause

8

of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made." *Clark*, 262 So. 3d at 1122 (quotation omitted). There is also a fifth element, that the prior judgment must have been an adjudication on the merits. *Gibson*, 186 So. 3d at 844. The absence of any of these five elements is fatal to a party's invocation of res judicata. *Id.*

3. Bad faith claims

Plaintiff alleges in this case bad faith failure by Allstate to pay her claim, or bad faith delay in the payment of her claim. In order to prevail on such a claim, a plaintiff must prove that the insurer lacked a legitimate or arguable reason for the manner in which it adjusted and paid the claim. *See, e.g., Estate of Minor v. United Servs. Auto. Ass'n*, 247 So. 3d 1266, 1269 (Miss. Ct. App. 2017), *reh'g denied* (Mar. 6, 2018), *cert. denied sub nom. Minor v. United Servs. Auto. Ass'n*, 247 So. 3d 1265 (Miss. 2018).

A finding of bad faith requires more than a showing of mere negligence in performing an investigation. *United Servs. Auto. Ass'n (USAA) v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010). "The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit." *Id.* (quotation omitted). If a plaintiff succeeds in carrying the "heavy burden" of proving the denial of an insurance claim was in bad faith, extracontractual damages, such as for emotional distress and attorneys' fees, are available. *Id.* Beyond that, "[a] punitive damages

9

claim should be decided by a jury if 1) there was no arguable or legitimate basis for denying coverage, and 2) the insurance company acted with malice or gross and reckless disregard for the rights of the insured." *United States Fid. & Guar. Co. of Mississippi v. Martin*, 998 So. 2d 956, 970 (Miss. 2008).

B. <u>Analysis</u>

Having considered the appropriate portions of the record, including the pleadings and their attached items, as well as the public documents from the State Court Action, and for the reasons that follow, the Court finds that each of the four identities for the application of res judicata are present, and that the Complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. The Court will grant Allstate's Motion pursuant to Rule 12(c).

1. <u>Identity of the subject matter of the action</u>

This identity involves the "substance of the lawsuit." *Clark*, 262 So. 3d at 1123. Where the subject matter of both the federal and state lawsuits is the same automobile collision, the Mississippi Supreme Court has held that this element of res judicata is satisfied. *Id.*

Here, the subject matter of both actions was the automobile collision which caused Plaintiff injuries and the obligations placed upon Allstate by virtue of its status as Plaintiff's underinsured motorist carrier. The subject matter also involved Allstate's responsibility for any actions it took contrary to its obligations under the insurance policy. Simply put, the subject matter of the actions is the same.

2. <u>Identity of the cause of action</u>

"This identity requires the 'cause of action' in both suits to be the same." *Clark*, 262 So. 3d at 1123. The Mississippi Supreme Court defines "cause of action" as the "underlying facts and circumstances upon which a claim has been brought." *Id.* Where a person has a choice of more than one theory of recovery for a given wrong, he or she "may not assert them serially in successive actions but must advance all at once on pain of the bar of res judicata." *Id.*

The Mississippi Supreme Court takes a "transactional approach to determine whether the identity of the cause-of-action requirement is met." *Id.* This approach instructs courts to look beyond the legal bases asserted and "rely more on the factual and transactional relationship between the original action and the subsequent action," as causes of action are the same if they arise from the same transaction. *Id.* (quotations omitted). Weight must be given to considerations such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quotation omitted).

In this case, the parties disagree as to when any bad faith claim Plaintiff had against Allstate arose. However, the legal theories advanced in the State Court Action are based upon the same underlying facts and circumstances as those in the present case, and both causes of action stem from the same set of underlying facts

and arise from the same transaction. The requirement that the cause of action must be the same is therefore satisfied.

3. <u>Identity of the parties to the cause of action</u>

To satisfy the third identity, the parties must be in privity with one another, and they had to be adverse to each other in the original action. *Clark*, 262 So. 3d at 1124. In this case, this identity is clearly present, as the parties are identical in both actions and they were adverse to one another in the State Court Action.

4. <u>Identity of the quality or character of a person against whom the claim is made</u>

While the Mississippi Supreme Court has not explicitly defined this identity, it has noted that "[e]xamples of this identity and its application exist, particularly where the parties are the same in the relevant actions and are acting in the same interests or capacity." *Clark*, 262 So. 3d at 1124. Where a party is sued in a limited or representative capacity in one case and then sued personally in another, the party's quality or character is not the same in both actions. *See id.* (quotation omitted).

In this case, the parties in the two actions are identical, and Plaintiff sued Allstate in both cases in the same capacity, as her underinsured motorist carrier. This identity is also met.

5. <u>Prior judgment</u>

In order to have preclusive effect under the defense of res judicata, the prior judgment must also have been a final judgment on the merits. *Gibson*, 186 So. 3d at 844. "A final judgment on the merits is a judgment based on the evidence rather

than on the technical or procedural grounds." *Strickland v. Estate of Broome*, 179 So. 3d 1088, 1094 (Miss. 2015) (quotation omitted). In this case, there is no dispute that there was a final judgment on the merits in the State Court Action. The state court jury rendered a verdict, and the state court entered a final judgment pursuant to that verdict based upon the policy limits of Allstate's uninsured motorist coverage.

6. Application of res judicata

In sum, each of the required elements of a res judicata defense are present. Indeed, Plaintiff does not actually dispute the presence of all of the identities. *See* Pl.'s Mem. [16] at 4. Instead, Plaintiff takes the position that Allstate has "skip[ped] over an essential prerequisite for the application of res judicata," that "the claim at issue must have been **available** to the plaintiff in the prior action." *Id.* (emphasis in the original). According to Plaintiff, "the elements of the bad-faith claim did not coalesce until six days before the trial of the UIM-benefits claim, when no judge would have permitted an amended complaint alleging a wholly new claim." *Id.* at 2; *see also id.* at 4 ("Allstate's bad faith was first suggested by Plaintiff's counsel on April 24, 2018, six days before the trial commenced in the underlying action."). The Court is not persuaded by this argument, and Plaintiff's assertion that she could not have raised a bad faith claim in the State Court Action is belied by the record.

According to the Complaint in this case, Plaintiff requested that Allstate settle the claim on July 14, 2016, and she first demanded policy limits from Allstate

13

on July 26, 2016, over five months before she filed the complaint in the State Court Action on January 17, 2017. Compl. [1-2] at ¶¶ 9, 14, 22. The Complaint details the requests that Plaintiff's counsel sent Allstate prior to her filing the state court complaint. Finally, Plaintiff's counsel wrote Allstate's counsel a letter six days prior to trial in the State Court Action averring that the $50,000.00 in coverage "should have been paid out *immediately*," and advised that counsel believed Allstate was acting in bad faith. *Id.* at ¶ 26 (emphasis added).

Simple use of the phrase "bad faith" in a letter from Plaintiff's counsel does not by itself determine when her bad faith claim arose under Mississippi law. Most of Plaintiff's current Complaint is devoted to Allstate's actions that occurred prior to the conclusion of the State Court Action, and many of those occurred before Plaintiff had even filed the earlier State Court Action. *See, e.g., id.* at ¶¶ 9-14, 22-24. Plaintiff's assertion that she could not have advanced a bad faith claim in the State Court Action is unpersuasive.

After careful consideration of the Complaint, the Court cannot seriously question that Plaintiff could have raised the issue of Allstate's bad faith in the State Court Action. What Plaintiff has essentially done constitutes claim-splitting, which is what res judicata aims to prevent. *See Ward Gulfport Properties, L.P.*, 176 So. 3d at 794. Plaintiff's claims are barred by the doctrine of res judicata, and Allstate's Motion should be granted.

14

III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Allstate Insurance Company's Motion [9] for Judgment on the Pleadings, or in the Alternative, for Partial Summary Judgment, is **GRANTED**, and Plaintiff's claims against Allstate Insurance Company are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this the 27th day of September, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE